**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| BANKERS STANDARD <br> INSURANCE CO., *et al.*, <br> <br> *Plaintiffs*, <br> <br> v. <br> <br> VINOD ANAND, *et. al.*, <br> <br> *Defendants*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:19-cv-1661-RCL <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OPINION**

In June of 2019, plaintiffs Bankers Standard Insurance Company, Pacific Indemnity Company, and Great Northern Insurance Company filed this lawsuit against defendants Vinod Anand ("Dr. Anand"), Asha Anand (who plaintiffs voluntarily dismissed in June of 2020),[1] and Nina Anand ("Ms. Anand"). Plaintiffs are suing defendants for damages from a fire that allegedly resulted from their negligence.[2] ECF No. 21. Plaintiffs filed for partial summary judgment on June 15, 2020, seeking summary judgment only on the issue of liability. ECF No. 29. Dr. Anand also filed for summary judgment on June 15, 2020. ECF No. 30. Ms. Anand does not seek summary judgment. Upon consideration of the motions, oppositions (ECF Nos. 32 & 33), and replies (ECF Nos. 34 & 35), the Court will **GRANT IN PART AND DENY IN PART** plaintiffs' motion and **GRANT** Dr. Anand's motion. For plaintiffs' negligence claim against Dr.

---

[1] The claim against Asha Anand appeared in the Amended Complaint as Count II. ECF No. 21 at 7-8.
[2] The Court has subject-matter jurisdiction over this case based on diversity. *See* 28 U.S.C. § 1332(a). Plaintiff Bankers Standard Insurance Company is incorporated in and has its principal place of business in Pennsylvania. ECF No. 21 at ¶ 1. Plaintiff Great Northern Insurance Company is incorporated in Indiana with its principal place of business in New Jersey. *Id.* at ¶ 2. Plaintiff Pacific Indemnity Company is incorporated in Wisconsin with its principal place of business in New Jersey. *Id.* at ¶ 3. Dr. Anand is a resident of Mississippi. *Id.* at ¶ 4. Ms. Anand is a resident of the District of Columbia. *Id.* at ¶ 6. Therefore, complete diversity exists because no plaintiff is from the same state as any defendant. The matter in controversy also exceeds $75,000, meaning that Section 1332(a) is satisfied.

Anand (Count I), summary judgment will be entered in Dr. Anand's favor, and the claim will be dismissed with prejudice. For plaintiffs' negligence claim against Ms. Anand (Count III), summary judgment will be entered in plaintiffs' favor on the issue of liability, though all parties agree that a trial is necessary to resolve the issue of damages.

## BACKGROUND[3]

Dr. Anand owned the property located at 3250 N St. NW, Unit 2A, Washington, DC ("the Anand Property") on December 17, 2017 when a fire erupted outside the Anand Property. ECF No. 29-1 at ¶¶ 4, 16. Dr. Anand resides in Missouri and was in Missouri at the time of the fire, but his daughter, Nina Anand, was living at the Anand Property at the time of the fire. *Id.* at ¶¶ 7-8; ECF No. 30-1 at ¶ 2. Ms. Anand was 28 years old and had been living at the Anand Property for nearly a year at the time of the fire. ECF No. 30-1 at ¶ 5, 10-11. Plaintiffs contend that Ms. Anand was not technically living alone because her father had a key and thus "retained possession and control of the Anand Property throughout all relevant times." ECF No. 29-1 at ¶ 41, 44; ECF No. 33-1 at ¶ 11. Defendants maintain that Ms. Anand was a tenant and paid her father $1,500 per month in consideration for her rent, while plaintiffs contend that there is no evidence of such payments, and thus Ms. Anand was merely a long-term guest in her father's second home. ECF No. 30-1 at 12; ECF No. 33-1 at ¶ 12.

The Anand Property included a woodburning fireplace in the living room. *See* ECF No. 30-1 at p. 3 (Figure 1). Prior to the incident in question, Ms. Anand had lit non-woodburning fireplaces and had used woodburning fireplaces, but she had never lit a woodburning fireplace before. ECF No. 32-3 at ¶ 10. The fireplace had not been used or cleaned since Dr. Anand

---

[3] The factual summary set forth in this Section of the Memorandum Opinion is taken from the parties' statements of material facts and responses thereto. Disputed facts are noted as such.

purchased the Anand Property. ECF No. 29-1 at ¶¶ 11-12. Two days before the fire broke out, Ms. Anand texted her mother, "Do I need to get a bunch of stuff for the fireplace?" ECF No. 32-3 at ¶ 14. Her mother responded, "You need to be super careful about causing a fire. We aren't sure if this fireplace is a working one. And once you light it you can't leave it. Better get someone to help you with it."[4] ECF No. 29-1 at ¶ 16. Prior to using the fireplace, Ms. Anand purchased a grate for the front of the fireplace, a poker, a shovel, and a brush. ECF No. 30-1 at ¶ 15. Dr. Anand, however, did not provide her with any tools or equipment for the fireplace, nor did he provide her with tools for the removal and disposal of materials from the fireplace, such as an ash bucket. ECF No. 29-1 at ¶¶ 28, 45, 46. Dr. Anand did not prohibit his daughter from using the fireplace and does not recall telling her that she could not use the fireplace. *Id.* at ¶¶ 47-48.

On the morning of December 16, 2017, Ms. Anand purchased two or three Duraflame logs from the Ace Hardware in Glover Park. ECF No. 30-1 at ¶ 16. That same day, she had approximately nine friends over for a holiday "smoothie bowl" party. *Id.* at ¶ 17. Around 11:30 a.m., she used a Duraflame log starter, and it seemed to work very well, burning all the way through and extinguishing on its own in the afternoon. *Id.* While at the Anand Property alone after the party, she burned another Duraflame log around 9:00 p.m. or 9:30 p.m. while watching a documentary. *Id.* at ¶ 18. Ms. Anand later noticed a lot of smoke coming from the log in the fireplace. *Id.* at ¶ 19. Plaintiffs contend that smoke was "pushed back" from the fireplace into the

---

[4] The first, third, and fourth sentences of this text message from Mrs. Anand are not hearsay as defined by Federal Rule of Evidence 801 because each sentence is a demand or command, and the second sentence is not hearsay because it goes to show knowledge. The second sentence, however, cannot be used to show that Dr. Anand was not sure if the fireplace worked, as accepting that information from Mrs. Anand would be impermissible speculation under Rule 602. To the extent that the second sentence is used to show Mrs. Anand's knowledge of the fireplace only, such knowledge is irrelevant, as she is not a defendant in this case—though the second sentence could still be used to show that Nina Anand should have been aware that the fireplace may not have been in working condition. As explained later in this Memorandum Opinion, however, the actual condition of the fireplace does not affect the ultimate outcome of the case, as defendants are not being accused of improperly using the fireplace; they are only accused of improperly disposing of the log.

living room despite the flue being open at the time, though defendants contest any relationship between the amount of smoke and the Duraflame log. ECF No. 29-1 at ¶ 20; ECF No. 32-3 at ¶ 20. Either way, after noticing this smoke, Ms. Anand put the smoking log in some water around 11:30 p.m. ECF No. 30-1 at ¶ 19. Plaintiffs dispute whether the log was actually soaked, saturated, or submerged, but they agree that she put it in a bowl of water. ECF No. 33-1 at ¶ 19.

After putting the log in the bowl of water, Ms. Anand took it to the Anand Property's trash area outside and placed it in a trash receptacle. ECF No. 30-1 at ¶ 20. Defendants claim that she did not know the log was still smoking, while plaintiffs point to deposition testimony admitting that she saw smoke still coming from the log while carrying it to the outdoor trash can.[5] *Id.*; ECF No. 33-1 at ¶ 20. Plaintiffs also highlight surveillance video footage of Ms. Anand carrying the log inside a paper bag, noting that the video shows how the log was still smoking in the paper bag when she placed it in the trash area. ECF No. 29-1 at ¶¶ 23-24. Defendants dispute this characterization of the video and point to testimony from Ms. Anand's deposition that the log was no longer smoking when she brought it outside, noting that the surveillance video could show either smoke, steam, or ash. ECF No. 32-3 at ¶ 24. The Court has viewed the surveillance video footage, and a reasonable jury would have no choice but to find that it conclusively shows smoke coming from the paper bag when Ms. Anand carried it outside. ECF No. 29-6, Exh. D.

After placing the log in the outdoor trash receptacle, Ms. Anand went upstairs and went to sleep. ECF No. 30-1 at ¶ 21. Approximately an hour or two later, she was awakened by the fire alarm and saw the fire. *Id.* at ¶ 22. At this time, Dr. Anand was asleep at his house in

---

[5] Interestingly, defendants do not dispute Paragraph 26 of plaintiffs' statement of material facts, which reads, "Nina Anand placed the *smoking* log and paper bag in an outdoor trash bin near the entranceway to her building." ECF No. 29-1 at ¶ 26 (emphasis added). Paragraph 27 of plaintiffs' statement of material facts, which reads, "Nina's explanation for placing the *smoking* log in the trash was she 'didn't know where else to place it,'" is similarly undisputed. ECF No. 29-1 at ¶ 27 (emphasis added). This means that although defendants have not admitted that the log was still smoldering, the Court finds they have admitted that it was "smoking."

4

Mississippi and learned of the fire via telephone call in the early hours of December 17, 2019. *Id.* at 23. The fire caused damage to neighboring properties owned by Marc Duber, Joseph and Patricia Lonardo, and Fabiola Martens, who were insured by the three plaintiff-insurance-companies. *Id.* at ¶¶ 25-26. Tim S. Hattwick, plaintiffs' origin and cause expert, intends to testify that the fire began when the smoking log ignited the paper and/or other combustible material in the trash bin. *Id.* at ¶ 27.

Plaintiffs' Amended Complaint brings one negligence claim against Dr. Anand and one negligence claim against Ms. Anand.[6] Both claims are based on the following acts:

- Causing or allowing a fire to occur at the premises
- Failing to exercise reasonable care when using the fireplace
- Failing to exercise reasonable care when discarding smoldering materials
- Failing to use a safe and acceptable receptacle when discarding smoldering materials
- Failing to extinguish smoldering materials before discarding
- Failing to prevent fire at the premises from spreading to the property or Duber, Lonardo, and/or Martens
- Failing to properly extinguish the fire after its discovery
- Failing to promptly contact the public fire authorities after discovering the fire
- Causing or allowing a fire hazard to exist within the Anand Property
- Otherwise failing to use due care under the circumstances

ECF No. 21 at 6-7, 9-10. Plaintiffs have moved for summary judgment in their favor on the question of Dr. Anand's and Ms. Anand's liability, though they believe that damages must be sorted out at trial. ECF No. 29. Dr. Anand also moves for summary judgment in his favor on the question of liability, which would negate any need for a trial on the damages issue with respect to Count I. ECF No. 30. Although Ms. Anand has not moved for summary judgment, she opposes plaintiffs' motion for summary judgment and believes that she is entitled to have a jury determine whether she is liable for negligence. ECF No. 32.

---

[6] As previously noted, the negligence claim against Asha Anand (Nina's twin sister) was voluntarily dismissed.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 629 (D.C. Cir. 2010). To show that a dispute is "genuine" and defeat a summary judgment motion, the nonmoving party must present evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. If, however, "there are genuine issues that properly can be resolved only by a finder of fact," summary judgment is not appropriate. *Id.* at 250. When deciding a summary judgment motion, the Court is not supposed to weigh the evidence—rather, the Court must determine whether there is contradictory evidence to be weighed at trial. *See Abraham v. Graphic Arts Int'l Union*, 660 F.2d 811, 814 (D.C. Cir. 1981).

## ANALYSIS

To succeed on a negligence claim, a plaintiff must establish that the defendant: (1) had a duty of care; (2) breached that duty of care; (3) harm ensued; and (4) the breach of duty was the direct and proximate cause of the harm. *See, e.g., Goolsby v. District of Columbia*, 354 F. Supp. 3d 69, 74 (D.D.C. 2019) (citing *Taylor v. District of Columbia*, 776 A.2d 1208, 1214 (D.C. 2001)). As explained below, the Court finds that plaintiffs have no viable claim against Dr. Anand, and he must be dismissed from the case. The Court also concludes that even when

drawing all reasonable inferences in Ms. Anand's favor, no rational jury could find that she acted reasonably, and thus she is liable for negligence as a matter of law.

## I. DR. VINOD ANAND

Dr. Anand seeks summary judgment in his favor, arguing that because he was not present for the fire and did not participate in the events leading up to the fire, he cannot be found liable for the damage it caused. Plaintiffs have advanced a number of legal theories in an attempt to convince this Court that Dr. Anand can and should be found negligent. The Court will review each theory in turn.[7]

### A. The Cleanliness and General Condition of the Woodburning Fireplace

One of plaintiffs' theories is that Dr. Anand breached his duty of care by failing to clean the fireplace and ensure that it was in working order. Although plaintiffs and defendants disagree about what Dr. Anand knew with respect to the functionality of the fireplace, this dispute ultimately does not matter. Plaintiffs do not allege that the fire broke out because of a faulty fireplace. Therefore, assuming that Dr. Anand had a duty as the owner of the property to keep the fireplace in good, working condition (or to prohibit anyone from using it if it were not in good, working condition), any breach of that duty was not the direct and proximate cause of the harm that resulted in this case. The only argument plaintiffs have to the contrary is that Ms. Anand removed the second log from the fire because the fireplace was pouring smoke into the living room, and thus if the fireplace had not been filled with smoke, she never would have taken the

---

[7] Dr. Anand also argues that the Amended Complaint does not properly plead these theories of liability. Even assuming that plaintiffs did properly plead these theories, however, not one of them can succeed based on the evidence presented.

log to the trash can at all.[8] This argument is flawed for two primary reasons. First, plaintiffs have not brought forth sufficient evidence to prove that a problem with the fireplace caused the second log to continue smoking rather than burning all the way down like the first log. Second, even assuming that a jury somehow found that the log continued smoking because of the condition of the fireplace, that did not *force* Ms. Anand to dispose of the second log in the way that she did. In other words, the smoke did not *force* Ms. Anand to place the log in a paper bag and put it in a combustible trash receptacle. Plaintiffs' argument is therefore far too attenuated to permit a jury to hold Dr. Anand liable for negligence. Essentially, because the fireplace itself did not cause the fire, the suggestion that Dr. Anand should have cleaned the fireplace (or should have prohibited his daughter from using it) is irrelevant. In other words, Ms. Anand's decisions with respect to her disposal of the log are separate from the condition of the fireplace, and thus the condition of the fireplace is not a valid means of holding Dr. Anand liable for negligence.

### B. The Unavailability of a Proper Receptacle

Related to the theory of negligence that the Court rejected above is plaintiffs' suggestion that Dr. Anand breached a duty of care by failing to provide a metal bin, ash bucket, or other suitable receptable for any used logs. Although Ms. Anand's admission that she "didn't know where else to place [the log]" other than the outdoor trash bin suggests that it would have been wise for Dr. Anand to provide a more suitable means of disposal for the log, the law does not require him to have done so. Plaintiffs describe *Samuels v. Southern Hills Limited Partnership*, 289 F. Supp. 3d 26 (D.D.C. 2017) as a case wherein "the court found a landlord could be held negligent for failing to provide a tenant adequate equipment to prevent fire damage." ECF No. 29-2 at 13. In *Samuels*, however, the tenant sued her landlord directly for the burns she sustained.

---

[8] Although it is unclear whether plaintiffs are actually making this argument, it was certainly implied.

8

289 F. Supp. 3d at 27-28. The Court in *Samuels* also cited a provision of a municipal code that required landlords to provide working fire extinguishers, meaning that the duty to provide a working fire extinguisher was clearly set forth by statute. *Id.* at 30. In this case, no such municipal code establishing a clear duty to provide a metal ash bucket for a fireplace exists.

Plaintiffs do cite a municipal regulation which states, "Ashes shall not be placed in combustible receptacles, nor on or against combustible materials." D.C. Mun. Regs. Tit. 14 § 906.6. "Ashes" are defined as "the residue from the burning of wood, coal, coke, or other combustible material." D.C. Mun. Regs. Tit. 14, § 199. While these provisions are certainly relevant to the question of whether Ms. Anand acted reasonably by putting the log in a combustible container with combustible materials, they do not impose a duty on Dr. Anand to equip his property with a metal bucket. Unlike the statute in *Samuels* which specifically required landlords to provide working fire extinguishers, this provision does not directly impose a duty on landlords to provide metal buckets or other receptacles for ashes. While deciding not to equip the Anand Property with an ash bucket was not necessarily a wise decision, as a matter of law, it did not *force* Ms. Anand to act the way that she did. In other words, it did not *force* Ms. Anand to dispose of the log by placing it in a paper bag while it was still smoking. To hold that a tenant is automatically responsible for damage caused by a smoking log simply because there was no metal receptable would be to fundamentally alter basic principles of negligence. If this Court were to find that Dr. Anand could be held liable for the fire damage because he did not provide an ash bucket—even when it was *Ms. Anand's* independent decision to dispose of the log the way that she did which caused the fire—there would be no limit to what safety precautions a jury could retroactively require a defendant to have taken.

Plaintiffs further argue that requiring landlords to provide adequate receptacles for burned wood makes good policy sense. Although the Court does not disagree with these points, the Court also cannot impose a duty on a defendant simply because it would be beneficial to society. While an individual can certainly be held liable for her decision to improperly dispose of a smoking log, and while state and local legislatures could choose to enact statutes requiring property owners and landlords to provide metal buckets for their woodburning fireplaces, the law as currently written does not allow the Court to impose such a specific requirement on Dr. Anand.

### C. Negligent Entrustment

Plaintiffs further argue that Dr. Anand can be held liable for negligent entrustment. Such an argument shows that plaintiffs have fundamentally misunderstood the boundaries of this limited doctrine. Negligent entrustment involves (1) making available to another a chattel which the supplier (2) knows or should have known the user is likely to use in a manner involving risk of physical harm to others (3) [and whom] the supplier should expect to be endangered by its use. *Young v. U-Haul Co.*, 11 A.3d 247, 249 (D.C. 2011). The Second Restatement of Torts further clarifies that the second element refers to a person who is likely to use the chattel in an unsafe manner due to "youth, inexperience, or otherwise." Restatement (Second) of Torts § 390.

The most glaring problem with this theory of liability is that Dr. Anand did not entrust his daughter with a "chattel." The fireplace itself is not a "chattel," as it is attached to the Anand Property and is immovable. *See* ECF No. 30-1 at p. 3 (Figure 1). Moreover, even if the fireplace were a "chattel," it is not what caused the fire, and Dr. Anand cannot be held liable for entrusting his daughter with something that was not the direct and proximate cause of the harm that

ensued.[9] Ms. Anand's inexperience with using woodburning fireplaces is thus not material to the outcome of the case, as the fireplace is not what caused the fire. Additionally, although the Duraflame log is a chattel, Dr. Anand did not entrust her with that log. Rather, she purchased both the log that she used during the day and the log that she used during the evening on her own on the morning of December 16, 2017. ECF No. 30-1 at ¶ 16. Therefore, the Duraflame log was not Dr. Anand's to entrust to anyone, let alone to Ms. Anand.

Although the trash bin into which Ms. Anand placed the smoking log is arguably a chattel that belonged to Dr. Anand and that he entrusted to his daughter, it was not reasonably foreseeable that Ms. Anand would use that trash bin in such a way as to endanger others. Indeed, the trash can was only used dangerously because of the smoking log. Of course, in hindsight it is clear that Ms. Anand did use the trash bin in a dangerous manner. The doctrine of negligent entrustment, however, does not require a defendant to be clairvoyant. While Dr. Anand undoubtedly understood that his daughter would use the trash bin while living at the Anand Property, he was not responsible for anticipating that his 28-year-old daughter would place a smoking log wrapped in paper inside of that trash bin.

To expand the negligent entrustment doctrine to chattels whose potential for unsafe use is not readily apparent under the circumstances would be extremely unfair. For example, imagine that a person lends his friend a backpack, but that friend negligently leaves the backpack propped up against a fire exit. If someone becomes trapped and injured in a fire because the backpack was blocking the fire exit, the friend who placed the backpack there can likely be held liable for the person's injuries; however, it would be exceedingly unjust to also hold liable the person who lent his friend the backpack, as it was not reasonably foreseeable that his friend would use the

---

[9] The negligent entrustment doctrine cannot be used to evade the direct and proximate cause requirement.

11

backpack to harm another person. This hypothetical is analogous to what plaintiffs ask this Court to do here, as a backpack and a trash bin are both, on their own, rather benign objects. In contrast, the chattels most commonly associated with negligent entrustment are cars, guns, explosives, and other objects whose ability to inflict harm if placed in the wrong hands should be obvious to a reasonable person. *See, e.g.*, Restatement (Second) of Torts § 390 (listing examples of negligent entrustment that exclusively involve cars, boats, and guns). Therefore, plaintiffs' negligent entrustment argument fails as a matter of law, as no reasonable jury could conclude that the fireplace, the Duraflame log, or the trash can fall within the narrow confines of the negligent entrustment doctrine.

**D. Vicarious Liability**

Plaintiffs final argument is that Dr. Anand is vicariously liable for Ms. Anand's negligence. According to plaintiffs, "by allowing [Ms. Anand's] use of a fireplace in a densely populated area like the Georgetown neighborhood of the District of Columbia, [Dr. Anand] created an unreasonable risk of harm warranting this Court to impute [Ms. Anand's] negligence onto [him]." ECF No. 29-2 at 16. Quite frankly, this argument is preposterous. As the Court already explained, the fireplace itself did not cause the fire, so Dr. Anand cannot be held liable simply because he allowed his daughter to use the fireplace. Even if the fireplace had caused the fire, merely allowing someone to use a fireplace in a populated area like Georgetown—without some other unreasonable act—is insufficient to impose liability.[10] If simply having a fireplace in a populated neighborhood is unreasonable, liability would be limitless and could even potentially extend to the builder for designing the Anand Property to include a fireplace.

---

[10] Furthermore, as already noted multiple times throughout this Memorandum Opinion, even if the fireplace was not in proper working condition, that was not the cause of the fire.

12

Plaintiffs further argue that because Dr. Anand maintained control over the property while Ms. Anand lived there, he is liable for any damage she caused. Plaintiffs, however, can provide no legal support for their argument that "[w]hen a property owner allows his family to use that property he should be vicariously liable for the injuries inflicted from that use." ECF No. 29-2 at 17. Although there are certain circumstances in which a special relationship between two people can make one of them vicariously liable for the other's actions, those narrow circumstances are not present here. Ms. Anand was a 28-year-old adult living on her own at the Anand Property. Dr. Anand did not have any special legal duty to control his adult daughter, nor could he have done so when he was nowhere near the Anand Property at the time of the incident.[11] Although in hindsight one naturally wishes that Dr. Anand had taught his daughter how to dispose of burned logs properly, he had no legal duty to do so; and absent a legal duty to act, no reasonable jury could find Dr. Anand vicariously liable for negligence. Therefore, plaintiffs' claim against him must fail as a matter of law. In reaching this conclusion, the Court is not impermissibly weighing the evidence. Rather, the Court has determined that there is no evidence to be weighed, as plaintiffs have not alleged any viable theory of negligence with respect to Dr. Anand.

## II. MS. NINA ANAND

The Court will grant plaintiffs' motion for summary judgment with respect to their negligence claim against Ms. Anand. Ms. Anand owed her neighbors (and by extension the

---

[11] There is an open factual question as to whether Ms. Anand was paying rent. Defendants maintain that she paid her father $1,500 per month via Venmo, though defendants dispute whether she ever made such payments. The answer to this factual question, however, does not change Dr. Anand's ultimate liability. Regardless of whether Ms. Anand was paying rent, it was her own independent decision to place a smoking log wrapped in paper into a regular trash bin that caused the fire. Whether she was his tenant or merely his adult daughter living in his second home, Dr. Anand is not vicariously liable for her actions.

13

insurance companies which covered the neighbors' claims) a basic duty of care to act as a reasonably prudent person when disposing of the log. *See, e.g., Tolu v. Ayodeji*, 945 A.2d 596, 603 (D.C. 2008) ("In negligence actions the standard of care by which the defendant's conduct is measured is often stated as 'that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances.'") (quoting *Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C. 1979)). Her actions when disposing of the log clearly breached that duty. Although everyone agrees that she placed the log in a bowl of water after removing it from the fire,[12] she then placed the log in a paper bag and carried it outside to the trash area while the log was still smoking. The surveillance video clearly shows smoke billowing from the paper bag when she carried it outside. ECF No. 29-6, Exh. D. Although defendants maintain that "the images shown in that video are potentially consistent with smoke, steam (after having been submerged in water), and ash," ECF No. 32-3 at ¶ 24, the Court has viewed the video, and a reasonable juror would have no choice but to find that it shows smoke.[13] Although Ms. Anand testified at her deposition that she did not see the smoke coming from the bag, the surveillance footage shows her opening the bag and staring straight into it while smoke pours out. Moreover, if the smoke is plainly visible on a surveillance video, it would have been exceedingly difficult for her not to notice it.

Even if a jury did somehow find that she never actually saw the smoke, a reasonable person in her position still *should have been aware* that it was smoking. The surveillance video plainly shows smoke billowing from the paper bag as she carried it outside and placed it in the

---

[12] The parties dispute whether the log was fully saturated, but either way, Ms. Anand's actions *after* removing the log still breached her basic duty of care. Therefore, while a jury's finding that she did not fully soak the log would bolster plaintiffs' claim, a jury's finding that she did fully soak the log still would not insulate her from liability for her subsequent actions. Resolution of this factual question by a jury is thus unecessary, as plaintiffs will prevail either way.

[13] Whether they intended to or not, defendants also admitted that the log was still smoking in two separate responses to plaintiffs' statement of material facts. *See* Footnote 5.

14

trash area, and it continued smoking even after she went back inside. ECF No. 29-6, Exh. D. A reasonable person simply does not wrap a log in paper and place it in a combustible bin without first confirming that it is no longer smoking. Defendants argue that what matters is Ms. Anand's "appreciation for the risk of harm at the time of the loss." ECF No. 32 at 27. This assertion, however, does not accurately portray the applicable legal standard. Whether Ms. Anand actually knew that a smoking log wrapped in paper and placed in a regular trash bin could cause a fire is not the end of the inquiry. What ultimately matters is that a reasonable person *should know* that a smoking log wrapped in paper and placed in a regular trash bin could cause a fire. Although plaintiffs have not alleged negligence *per se*, the D.C. Municipal Regulation which prohibits placing ashes (including "residue from the burning of wood") in "combustible receptacles" or "against combustible materials" confirms the unreasonableness of Ms. Anand's actions. D.C. Mun. Regs. Tit. 14 §§ 199, 906.6. No rational jury could find that her actions were reasonable, meaning that Ms. Anand breached her duty of care as a matter of law.

It is undisputed that the fire which broke out and damaged the surrounding properties constitutes "harm." Therefore, the only question left to resolve is whether Ms. Anand's breach of her duty of care—placing the smoking log wrapped in paper in a regular trash bin—caused the fire. Plaintiffs' expert witness will testify that her actions directly caused the fire (specifically, the smoke from the log ignited the paper bag and other combustible material in the trash bin). Defendants have not filed a motion to exclude this expert's testimony, they do not meaningfully challenge his findings, and they have not retained an expert of their own.[14] All they do in their opposition is vaguely assert that "at least thirty-five (35) minutes elapsed between the time [Ms. Anand] discarded the debris and the time of the fire—with no accounting of what happened in

---

[14] Although the Court agrees with defendants that the D.C. Fire Department's report is likely inadmissible, the testimony that plaintiffs' expert would give at trial is sufficient to establish causation.

between." ECF No. 32 at 28. Although of course it would be plaintiffs' burden at trial to prove causation, defendants have not even attempted to present an alternate theory of how the fire began. Additionally, Ms. Anand admitted in a text message that the fire was her "fault." Although of course this statement cannot be used to conclusively show that she acted negligently (because that would be an improper legal conclusion) or that the log caused the fire (because lay witnesses cannot testify to expert conclusions), it can be used to demonstrate that she did not believe there was any other cause of the fire.[15] Furthermore, the surveillance footage is consistent with the expert's conclusion, showing the fire igniting in the exact place where Ms. Anand placed the paper bag with the smoking log. Essentially, in light of the available evidence presented by both sides, the only logical conclusion is that the smoking log caused the fire.

This is especially true in light of the applicable standard for negligence claims: a preponderance of the evidence. Under this standard, plaintiffs do not need to disprove wild speculation about what else may have caused the fire. All plaintiffs need to do is show that it is *more likely than not* that the log caused the fire. Based on the evidence the parties have presented, a reasonable jury would have no choice but to conclude that it is more likely than not that the smoking log caused the fire. In making this finding, the Court is not impermissibly weighing the evidence. Rather, the Court has examined the available evidence and found that even when viewing the evidence in the light most favorable to Ms. Anand, there is simply no other conclusion for a rational jury to draw. Therefore, Ms. Anand is liable for negligence as a matter of law, and all that remains to be determined is the amount of damages she owes to plaintiffs.

---

[15] Even without this text message, the Court would still hold that a reasonable jury must find that plaintiffs have established causation.

## CONCLUSION

Based on the foregoing, the Court will **GRANT IN PART AND DENY IN PART** plaintiffs' motion for partial summary judgment (ECF No. 29) and **GRANT** Dr. Anand's motion for summary judgment (ECF No. 30). It will be **ORDERED** that for plaintiffs' negligence claim against Dr. Vinod Anand (Count I), summary judgment will be entered in his favor, and he is dismissed from this case with prejudice. It will be further **ORDERED** that for plaintiffs' negligence claim against Ms. Nina Anand (Count III), summary judgment will be entered in plaintiffs' favor on the issue of liability, though all parties agree that a trial is necessary to resolve the issue of damages.

A separate Order accompanies this Memorandum Opinion.

Date: August 13, 2020

Royce C. Lamberth
United States District Court Judge